Michele Haydel Gehrke (SBN 215647)
mgehrke@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Fatemeh S. Mashouf (SBN 288667)
fmashouf@reedsmith.com
REED SMITH LLP
355 South Grand Ave
Suite 2800
Los Angeles, CA 90071
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

*Attorneys for Defendant*
United Airlines, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLYSON CHAGAS,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED AIRLINES, INC., and DOES 1 through 10, inclusive,<br><br>Defendant. | Case. No.: 2:19-cv-03860<br><br>**DISCOVERY MATTER**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR ORDER TO SHOW CAUSE RE CONTEMPT AND SANCTIONS AGAINST EDWARD GARREN AND MOTION TO COMPEL COMPLIANCE WITH FRCP 45(g)**<br><br>[ASSIGNED TO HONORABLE JACQUELINE CHOOLJIAN FOR DISCOVERY PURPOSES]<br><br>Hearing: March 24, 2020 at 9:30 a.m.<br>Complaint Filed: March 28, 2019<br>Discovery Cut Off: March 2, 2020<br>Pretrial Conference and Trial Date: TBD |

**MPA ISO APPLICATION FOR OSC RE CONTEMPT AND SANCTIONS AGAINST EDWARD GARREN AND MOTION TO COMPEL COMPLIANCE WITH FRCP 45(g)**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Contents

**Page**

I       INTRODUCTION ..................................................................................5

II      FACTUAL BACKGROUND ...............................................................6

     A.    Garren Evaded Service But Defendant Was Successful In Serving Him With Two Subpoenas After Conducting Surveillance On Him ....................................................................6

     B.    Garren Ignored the Subpoenas Despite Having an Authorization Signed by Plaintiff........................................8

     C.    Garren Finally Contacted Defense Counsel In A Fit Of Rage And Stated He Would Not Comply With the Subpoena ........................9

III     LEGAL ANALYSIS ............................................................................11

     A.    Legal Standard For Subpoenas Under FRCP 45 And Motions For Compliance And Contempt ...............................................11

     B.    Garren Should Be Ordered To Promptly Produce All Records and Appear For His Deposition Regardless Of The Discovery Cut-Off Date........................................................13

     C.    The Court Should Set an Order to Show Cause re Contempt As to Garren........................................................14

     D.    Monetary Sanctions Against Garren Are Appropriate ..........15

IV      CONCLUSION ....................................................................................16

2

**MPA ISO APPLICATION FOR OSC RE CONTEMPT AND SANCTIONS AGAINST EDWARD GARREN AND MOTION TO COMPEL COMPLIANCE WITH FRCP 45(g)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Bademyan v. Receivable Mgmt. Servs. Corp.*,
   No. CV0800519MMMRZX, 2009 WL 605789 (C.D. Cal. Mar. 9,
   2009) ............................................................................................................. 11, 13, 15

*Corrales v. Castillo*,
   No. 2:07-cv-00141-LRH-LRL, 2008 WL 4186233 (D. Nev. Sept. 3,
   2008) ........................................................................................................................... 15

*Cunningham v. Hamilton County, Ohio*,
   527 U.S. 198 (1999). Civil ........................................................................................ 12

*Delis v. Sionix Corp.*, No. SACV 13-1547 AG (RNBx), 2015 WL
   12733439, (C.D. Cal. Mar. 12, 2015) ....................................................................... 12

*In re DG Acquisition Corp.*,
   151 F.3d 75 (2nd Cir. 1998) ...................................................................................... 12

*Donovan v. Mazzola*,
   716 F.2d 1226 (9th Cir. 1983) ................................................................................... 13

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
   702 F.2d 770 (9th Cir. 1983) ..................................................................................... 12

*Forsythe v. Brown* (D NV 2012)
   281 FRD 577................................................................................................................ 13

*FTC v. Enforma Natural Prods., Inc.*,
   362 F.3d 1204 (9th Cir. 2004) ................................................................................... 12

*Halawani v. Wolfenbarger*,
   No. 07-15483, 2008 WL 5188813 (E.D. Mich. Dec. 10, 2008)............................... 12

*Henry Schein, Inc. v. Certified Business Supply Inc.*,
   No. SACV 03-1662 DOC (ANx), 2008 WL 4962851, *1 (C.D. Cal.
   Nov. 18, 2008) ........................................................................................................... 15

3

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Higginbotham v. KCS Int'l, Inc.*,
   202 F.R.D. 444 (D. Md. 2001) ............................................................................ 11

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*,
   539 F.3d 1039 (9th Cir. 2008) ........................................................................... 15

*Moon v. SCP Pool Corp.*,
   232 FRD 633 (C.D. CA 2005)............................................................................ 12

*Pennwalt Corp. v. Durand–Wayland, Inc.*,
   708 F.2d 492 (9th Cir. 1983) ...................................................................... 12, 15

*Stone v. City of San Francisco*,
   968 F.2d 850 (9th Cir. 1992) ............................................................................ 13

*Tracfone Wireless, Inc. v. LaMarsh* (WD PA 2015)
   307 FRD 173........................................................................................................ 12

*Whitlow v. Martin*
   263 FRD 507 (C.D. IL 2009) ........................................................................... 12

**Other State Cases**

*Delis v. Sionix Corp.*,
   No. SACV 13-1547 .......................................................................................... 12

*Henry Schein, Inc. v. Certified Business Supply Inc.*,
   No. SACV 03-1662 ........................................................................................... 15

**Other Authorities**

FRCP 30(d)(2)

FRCP Rule 37 ........................................................................................................ 15

FRCP 37(a)(3)(B)(i) .............................................................................................. 15

FRCP 45 ................................................................................................................. 11

FRCP 45 ................................................................................................................. 11

FRCP 45(b)(1) ....................................................................................................... 13

FRCP 45(g) ...................................................................................................... 12, 13

4

**MPA ISO APPLICATION FOR OSC RE CONTEMPT AND SANCTIONS
AGAINST EDWARD GARREN AND MOTION TO COMPEL COMPLIANCE
WITH FRCP 45(g)**

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

# I      INTRODUCTION

Defendant has invested months and significant effort to obtain highly relevant medical records in this matter since August 2019. Plaintiff's therapist, Edward Garren ("Garren"), has spent months evading service of subpoenas and, once served, has outright ignored them.  Garren claims that he is not bound by the subpoenas and has decided that the medical authorization release form signed by Plaintiff is not adequate to require his compliance with the subpoenas. As such, he chose not to produce records and not to appear for his deposition. Even more concerning, however, is that it appears Garren may be coordinating with Plaintiff's counsel who also did not appear for the deposition.

Instead of complying with the properly served subpoenas, Garren wrote a litigation-specific letter the day after his records were due, addressed to Plaintiff's counsel, which he faxed the day after his non-appearance. Garren wrote that he began treating Plaintiff in "1917…because of work related trauma." He makes incredibly bold and conclusory statements about the facts of the case and states that Defendant "betrayed" Plaintiff and "caused him to become both anxious and depressed" with "long term damage" and "Post Traumatic Stress." While Garren is willing to write this extraordinary letter to opposing counsel without any legal duty to do so, he is unwilling to comply with the subpoenas.

As a result, Defense counsel contacted Garren to determine if the instant Application would be necessary or if he intended to comply with the subpoenas, at which time Garren went on an angry tirade by email and phone, indicating he would not comply with the subpoenas and challenged Defendant to bring the instant Motion.

**MPA ISO APPLICATION FOR OSC RE CONTEMPT AND SANCTIONS AGAINST EDWARD GARREN AND MOTION TO COMPEL COMPLIANCE WITH FRCP 45(g)**

## II      FACTUAL BACKGROUND

### A.      Garren Evaded Service But Defendant Was Successful In Serving Him With Two Subpoenas After Conducting Surveillance On Him

On November 8, 2019, Defendant began attempting to serve Garren with a records subpoena, seeking Plaintiff's medical records. Declaration of Fatemeh S. Mashouf ("Mashouf Declaration") at ¶ 21; Declaration of Rick Matsumoto ("Matsumoto Declaration") at 1:20-24.  First, Defendant attempted to serve Garren at the address Plaintiff provided in discovery responses.  However, Plaintiff provided the wrong address as Garren's neighbor indicated that Garren no longer resided there. Mashouf Declaration at ¶ 2.  Thus, Defendant tracked down an alternative address and made five attempts to serve him with no success between November 8 and November 16.  Matsumoto Declaration at 1:26-27, Exhibit B.  On three of the occasions, the process server either heard noise, saw lights, or saw movement but no one would answer the door. *Id.*

As a result of Garren's obvious avoidance of process, Defendant had to expend additional cost and effort to complete service. Mashouf Declaration at ¶ 3.  Defendant prepared an updated records subpoena, due January 10, 2020, and a deposition subpoena also with the same records request, for January 27, 2020.  Mashouf Declaration at ¶ 3.  Defendant's process server spent two days waiting for Garren to exit his building and serve him. Finally, on December 20, 2019, Garren was hand served both updated subpoenas after identifying himself while taking out his trash. Matsumoto Declaration at 2:1-3, Exhibit C.  He was simultaneously provided payment for his mileage and witness fee. *Id.*

Thereafter, Defendant's process server made repeated efforts to obtain a status on the records request and ensure compliance.  Matsumoto Declaration at 2:10-26-3:1-6.  The process server contacted Garren's office and spoke several times with his receptionist who transferred them to Garren's voicemail. The process server left

**MPA ISO APPLICATION FOR OSC RE CONTEMPT AND SANCTIONS AGAINST EDWARD GARREN AND MOTION TO COMPEL COMPLIANCE WITH FRCP 45(g)**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  detailed voicemails each time. Garren did not return the voicemails. On the due date

2  of the records subpoena, January 10, the process server sent a driver to Garren's

3  office.  Matsumoto Declaration at 2:16-18.  However, no one was present and the

4  process server continued to attempt to contact Garren by phone with no success.

5  The following day, instead of responding to the process server, Garren drafted a

6  litigation specific letter detailed below directed to Plaintiff's counsel discussing

7  alleged injuries Plaintiff claims to have sustained as a result of his termination.

8  Mashouf Declaration at ¶ 4, Exhibit A.  Over the next several weeks, the process

9  server made several more attempts to obtain the records and a response from Garren.

10  Garren did not respond to any of these attempts.  Matsumoto Declaration at 2:10-26-

11  3:1-6.

12  Prior to the scheduled deposition, Defendant also mailed Garren Plaintiff's

13  executed HIPPA authorization providing that Garren is authorized to produce medical

14  and mental health records to the process server.  Mashouf Declaration at ¶ 5-6, Exhibit

15  B-C.  The authorization was later hand served on Garren as well.  Matsumoto

16  Declaration at 4:5-7.

17  On January 22, 2020, Defense counsel spoke to Plaintiff's counsel and asked

18  him to reach out to Garren since Garren had not provided any records and since his

19  deposition was coming up.  Mashouf Declaration at ¶ 7.  Plaintiff's counsel said he

20  would see what he could do. Defense counsel made it clear that the deposition is still

21  on calendar. Plaintiff's counsel did not indicate that he was not attending the

22  deposition.  Mashouf Declaration at ¶ 7.

23  On January 27, 2020, neither Garren nor Plaintiff's counsel attended the

24  deposition and neither contacted Defense counsel regarding their non-appearance.

25  Defendant took a non-appearance.  Mashouf Declaration at ¶ 8, Exhibit D.  The day

26  after, Garren reached out to Plaintiff's counsel by faxing him the litigation specific

27  letter noted above. In the letter, Garren makes sweeping statements about what

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

7

**MPA ISO APPLICATION FOR OSC RE CONTEMPT AND SANCTIONS AGAINST EDWARD GARREN AND MOTION TO COMPEL COMPLIANCE WITH FRCP 45(g)**

supposedly took place in the events underlying the instant Action and what actions Defendant did and did not take in connection with Plaintiff's employment and termination. Mashouf Declaration at ¶ 4, Exhibit A.  He claims he has been treating Plaintiff since "1917…because of a work related trauma." He makes sweeping statements, such as that Defendant's "baseless slander and getting him fired from a job he was dedicated to, caused extensive emotional trauma." He then states that Defendant caused Plaintiff anxiety, depression, and Post Traumatic Stress and that "the situation, and the slander and character attacks perpetrated by his employer have left long term damage to his sense of well being and safety." There is no context explaining why Garren sent this fax to Plaintiff's counsel or on what basis he renders these unsubstantiated opinions.

Defense counsel received a copy of this letter on February 4, 2020 and, thereafter, developed the belief that Garren and Plaintiff's counsel were coordinating Garren's non-compliance in light of the timing of their communications and their simultaneous non-appearance.  Mashouf Declaration at ¶ 9.  Indeed, if Garren and Plaintiff's counsel had not been communicating with one another, the litigation-specific letter makes absolutely no sense. Thereafter, when Defense counsel asked why Plaintiff's counsel did not appear, he stated he "assumed" it was off calendar without explaining what information he possessed that would allow him to make such an assumption when Defense counsel never made any statements to that effect. Mashouf Declaration at ¶ 9.

## B.    Garren Ignored the Subpoenas Despite Having an Authorization Signed by Plaintiff

As relevant background to this issue, Plaintiff's counsel took the position that Defendant is not entitled to Plaintiff's unredacted medical records even though he had already waived all objections by not timely responding to the first set of discovery, as detailed in the pending Motion to Compel. Given that both Plaintiff's doctor and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

8

therapist had withheld documents despite all of Defendant's attempts to subpoena them, and despite the fact that no objections or Motion to Quash had been filed, Defendant reluctantly agreed to a First Look Agreement of the medical records in exchange for a signed HIPPA authorization to release the records.[1] Defense counsel sent a sample HIPPA authorization form to Plaintiff's counsel.

On January 21, 2020, Plaintiff's counsel provided a different signed authorization to release his medical records addressed to Garren indicating that Garren may release records to the process server. Mashouf Declaration at ¶ 5, Exhibit B. The authorization included a release of mental health records which was both mailed and personally served on Garren. As of the date of this Motion, no records have been received.  Mashouf Declaration at ¶ 16.

**C.   Garren Finally Contacted Defense Counsel In A Fit Of Rage And Stated He Would Not Comply With the Subpoena**

On February 7, 2020, Defense counsel left a voice message for Garren indicating an intent to proceed with the instant motion if he did not comply with the subpoenas. Mashouf Declaration at ¶ 10, Exhibit E.  Defense counsel requested a response by the following Monday. Defense counsel followed up with a confirming email shortly thereafter.  Mashouf Declaration at ¶ 10, Exhibit E.  Garren responded to the email:

Mr. Mashouf:

Apparently you are not familiar with FEDERAL LAW regarding MENTAL HEALTH CLIENT RECORDS.  Mental health records are protected by federal law.  If a client signs a release to a specific person, I can communicate with that person.  I CANNOT disclose any information, even acknowledge a client is seeing me without the client signing a release specific to a named individual.  I have no such release authorizing me to disclose any information to you.

---

[1] The First Look Agreement was entered into, explicitly setting forth that it was without prejudice to Defendant's right to seek Court intervention to seek the full records without redactions, which Defendant has now submitted to the Court by way of a Joint Stipulation re Motion to Compel.

9

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

I would add that Medical Health Records do not have the same level of protection of confidentiality.  It is annoying that you and your staff do not seem to know, or respect that fact.

Also, the subpoena your office served me with did not have a judges signature, and was not signed by a judge in a court of law.

I deeply resent your "scare tactics" not to mention the volume of phone calls from a legal records company.  I have repeatedly explained to their staff the issues in the first paragraph.[2]

So, if I end up in court, I will testify to the judge that your company harassed me, and repeatedly tried to involve me in a violation of federal law, and then you resorted to these cheap "scare tactics" and intimidation.

I am explaining this to you, here in writing, and will not be calling you on Monday AM.

Regards, Edward Garren, MA, LMFT

Mashouf Declaration at ¶ 10, Exhibit E.

Within fifteen minutes of the email, Garren called Defense counsel and unleashed an angry tirade against her. Mashouf Declaration at ¶ 12.  Defense counsel took notes of what Garren was stating -- he was not going to jeopardize his "craft" and the subpoena was not signed by a Judge so it is not a Court order.  At that time, counsel informed Garren that subpoenas are enforceable and do not require a Judge's signature and that she would be happy to send him further legal guidance on the issue so he understands what a subpoena is. This only made him angrier, stating that he was not authorized to send over the records. He expressed an unwillingness to comply with the subpoena. He angrily expressed his frustration that he would treat a patient for a limited period of time and then be brought into a litigation because of a patient's lawsuit.

Defense counsel further told Garren that he had been served with an authorization form signed by Plaintiff, but he responded that it "isn't even [his] own authorization form."  Mashouf Declaration at ¶ 13.  He was under the impression that

---

[2] Defense counsel's "staff" had never made contact with Garren aside from the voice message and email described above from counsel herself.  Mashouf Declaration at ¶ 11.

**MPA ISO APPLICATION FOR OSC RE CONTEMPT AND SANCTIONS AGAINST EDWARD GARREN AND MOTION TO COMPEL COMPLIANCE WITH FRCP 45(g)**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Defense counsel had drafted the authorization form, but did not allow Defense counsel

2   to correct his misunderstanding.

3          He stated that the authorization is inadequate because he cannot release the

4   records to a corporation (the process server) and must instead have the name of a

5   specific person on the release. Mashouf Declaration at ¶ 13.  He stated that his records

6   are to be treated differently under the law than medical records and he wants a Judge

7   to order him to Court before he will comply. He raised his voice, stating how

8   "aggravated" he was. At one point, he stated he thought Defense counsel's email or

9   voice message was treating him like he was a sixth grader and he began defending his

10  educational credentials. He then explained his understanding of the law, stating he has

11  a master degree "that is harder to pass than the bar exam," concluding, "I know the

12  law!" He stated he resented Defense counsel's "intimidation tactics and now, with

13  that, I am hanging up. I have nothing else to say. I am hanging up. Good bye." Garren

14  then hung up the phone.

15         This email and call on February 7, 2020 reflects the only time Garren contacted

16  Defense counsel.  Mashouf Declaration at ¶ 14.  Significantly, Plaintiff did not submit

17  timely objections to the subpoenas and did not file a Motion to Quash or other motion

18  in connection with the subpoenas.[3]  Mashouf Declaration at ¶ 15.

19  **III    LEGAL ANALYSIS**

20         **A.    Legal Standard For Subpoenas Under FRCP 45 And Motions**

21                **For Compliance And Contempt**

22          Federal Rules of Civil Procedure, ("FRCP") Rule 45 governs subpoenas issued

23  to non-parties. Subpoenas issued by attorneys are treated as orders of the

24  Court. *Bademyan v. Receivable Mgmt. Servs. Corp.*, No. CV0800519MMMRZX,

25  2009 WL 605789, at *2 (C.D. Cal. Mar. 9, 2009), citing to *Higginbotham v. KCS Int'l,*

---

[3] After the period for objections had already passed, Plaintiff's counsel sent an informal email regarding his position regarding Plaintiff's right to privacy in his medical records. To date, no objections have been submitted and served. Mashouf Declaration at ¶ 15.

**MPA ISO APPLICATION FOR OSC RE CONTEMPT AND SANCTIONS AGAINST EDWARD GARREN AND MOTION TO COMPEL COMPLIANCE WITH FRCP 45(g)**

*Inc.*, 202 F.R.D. 444, 455 (D. Md. 2001); *see also Halawani v. Wolfenbarger*, No. 07-15483, 2008 WL 5188813, at *7 (E.D. Mich. Dec. 10, 2008) ("Although a subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nonetheless an act in defiance of a court order and exposes the defiant witness to contempt sanctions.")

Failure to serve timely objections waives all grounds for objection, including privilege. *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2nd Cir. 1998); *Moon v. SCP Pool Corp.*, 232 FRD 633, 636 (C.D. CA 2005); *Whitlow v. Martin* 263 FRD 507, 510 (C.D. IL 2009).

A court may impose contempt sanctions for failing to comply with a valid subpoena where it finds, by clear and convincing evidence, that a valid court order existed, the subject of the order had knowledge of it, and the subject disobeyed it. *FTC v. Enforma Natural Prods., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004); *see also Pennwalt Corp. v. Durand–Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (FRCP 45(g) allows a court to "hold in contempt a [non-party] who, having been served, fails without adequate notice to obey the subpoena."). Contempt may be criminal or civil. Sanctions may range from fines to reimbursement to jail time. *Tracfone Wireless, Inc. v. LaMarsh* (WD PA 2015) 307 FRD 173, 175; *see also Delis v. Sionix Corp.*, No. SACV 13-1547 AG (RNBx), 2015 WL 12733439, at *1-*2 (C.D. Cal. Mar. 12, 2015) (Guilford, J.) (issuing order to show cause why nonparty should not be held in contempt for failing to respond to subpoena). A civil contempt sanction is designed to force the contemnors to comply with an order of the court and therefore affect discovery. *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 207 (1999). Civil contempt is characterized by the court's desire to compel obedience with a court order, or to compensate the contemnor's adversary for the injuries which result from the non-compliance. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983).

**MPA ISO APPLICATION FOR OSC RE CONTEMPT AND SANCTIONS AGAINST EDWARD GARREN AND MOTION TO COMPEL COMPLIANCE WITH FRCP 45(g)**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    A district court has wide latitude in determining whether there has been a

2  contemptuous defiance of one of its orders. *Stone v. City of San Francisco*,

3  968 F.2d 850, 856 (9th Cir. 1992).  In making its contempt determination, a district

4  court considers the witness' history of non-compliance and the extent to which the

5  witness failed to comply during the pendency of the motion for contempt. *Id.*;

6  *see Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) ("To satisfy this burden

7  the individual appellants were required to show 'categorically and in detail' why they

8  were unable to comply with the court's previous order"). A party's subjective intent

9  and willfulness is irrelevant. *Bademyan*, 2009 WL 605789, at 2. Failure to comply

10  with a subpoena without adequate excuse (e.g., subpoena requiring nonparty to attend

11  at a place outside the limits for service) is a contempt of court. FRCP 45(g); *Forsythe*

12  *v. Brown* (D NV 2012) 281 FRD 577, 588-589.

13    **B.    Garren Should Be Ordered To Promptly Produce All Records**

14    **and Appear For His Deposition Regardless Of The Discovery**

15    **Cut-Off Date**

16    Defendant still needs Garren's records and deposition. Given the long delay in

17  obtaining the records and Garren's deposition, Defendant asks that the Court order

18  production of the records promptly followed by Garren's deposition within ten

19  business days thereafter, regardless of the discovery cut-off.  Defendant also seeks

20  confirmation from the Court that Garren's witness fees is $40, as has already been

21  provided, and not Garren's professional hourly rate. Garren has not been designated as

22  an expert in this matter and is not entitled to anything beyond the witness fee as

23  provided in FRCP 45(b)(1). In the alternative, and in light of Plaintiff's long history of

24  avoiding producing Plaintiff's medical records as described in the pending Motion to

25  Compel, Defendant asks that the Court exclude all evidence of Plaintiff's emotional

26  distress he attributes to Defendant.

27

28

**MPA ISO APPLICATION FOR OSC RE CONTEMPT AND SANCTIONS
AGAINST EDWARD GARREN AND MOTION TO COMPEL COMPLIANCE
WITH FRCP 45(g)**

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## C.      The Court Should Set an Order to Show Cause re Contempt As to Garren

Garren has made it clear that he was fully aware of the subpoenas served on him, as well as the authorization form. He made it clear that he willfully decided not to comply with the subpoena, in part because he thinks he knows the law and is not bound by it. While he states what he believes the law to be, he has not actually provided the basis for his position to allow Defendant to respond to his assertions. He has evaded the subpoenas, through and through, and instead of responding to the earlier calls in advance of the due date, he made the decision to just ignore it all while Defendant had to incur unnecessary costs in trying to obtain his compliance. Garren also made it clear that without Court intervention, he has no intention of appearing or producing documents. Lastly, his outrage in the face of non-adversarial legal proceedings and his complete disregard of his legal obligations justify a penalty.

What is telling here, aside from Garren's fury during his call and in his email, is that he claims he cannot release records related to his patients without a signed authorization directed to a particular individual and not a corporation.  Yet, he felt it was appropriate to fax Plaintiff's counsel the litigation-specific letter. Had there been another HIPPA authorization, it should have been produced by Plaintiff's counsel when he produced the litigation-specific letter. Thus, Defendant assumes that Garren provided the litigation-specific letter to Plaintiff's counsel's office without having an authorization in hand aside from the one he contends is inadequate.

Further, as described above, the timing of his letter is highly indicative of apparent coordination between Garren and Plaintiff counsel which is entirely inappropriate. If Garren wanted to make a good faith effort to figure out his legal obligations and obtain an authorization, all he needed to do was contact Defense counsel. But instead, he contacted Plaintiff's counsel and chose not to comply with his obligations.

14

**MPA ISO APPLICATION FOR OSC RE CONTEMPT AND SANCTIONS AGAINST EDWARD GARREN AND MOTION TO COMPEL COMPLIANCE WITH FRCP 45(g)**

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    This background strongly supports an order of contempt against Garren. Thus,

2    Defendant submits this Application to set an Order to Show Cause re Contempt of

3    Garren.

4    ### D.    Monetary Sanctions Against Garren Are Appropriate

5    Defendant requests monetary sanctions against Garren pursuant to FRCP

6    30(d)(2), 37(a)(3)(B)(i) and the Court's inherent power. *See Pennwalt Corp*., 708 F.2d

7    at 494 (Rule 37 authorizes an award of expenses, including attorney fees, for a motion

8    to compel nonparties to attend depositions). The Ninth Circuit allows a Court to

9    sanction a contemnor for reasonable attorney's fees. *See Koninklijke Philips Elecs.*

10   *N.V. v. KXD Tech., Inc*., 539 F.3d 1039, 1042 (9th Cir. 2008); *see also Bademyan*,

11   2009 WL 605789, at 4; *Henry Schein, Inc. v. Certified Business Supply Inc*., No.

12   SACV 03-1662 DOC (ANx), 2008 WL 4962851, *1 (C.D. Cal. Nov. 18, 2008)

13   (recognizing that an award of reasonable attorneys' fees and costs is an appropriate

14   sanction to impose on a party held in civil contempt); *Corrales v. Castillo*, No. 2:07-

15   cv-00141-LRH-LRL, 2008 WL 4186233, * 1 (D. Nev. Sept. 3, 2008) (sanctioning

16   contemnor for "reasonable expenses, including attorney's fees and costs" incurred in

17   filing the contempt motion and reply, preparing for and participating in the hearing on

18   the motion, and conducting a contempt deposition).

19   Depending on whether Defendant is required to expend significant further time

20   and attorney's fees in pursuing a resolution of this motion, including the possible need

21   to file further briefing and/or appear before the Court, Defendant requests sanctions

22   against Garren in the amount expended in attorney's fees and costs in attempting to

23   obtain his records and deposition, such as process server costs and court reporter costs

24   during his non-appearance.[4]

25

26   ───────────────────
     [4] Defendant is willing and able to provide a declaration to the Court specifying the

27   amount of attorney's fees and costs depending at a time that would be more accurate
     after the filing of this motion, Reply, any further briefing as requested by the Court,

28   and/or potential appearance.

**MPA ISO APPLICATION FOR OSC RE CONTEMPT AND SANCTIONS
AGAINST EDWARD GARREN AND MOTION TO COMPEL COMPLIANCE
WITH FRCP 45(g)**

IV     **CONCLUSION**

For the reasons detailed above, Defendant respectfully requests an Order with the following relief:

1. A date for an Order to Show Cause re Contempt of Garren;

2. An Order compelling the production of all documents responsive to the Subpoena within five business days of an Order and appearance for a deposition within ten business days thereafter; and

3. An Order granting attorney's fees and costs against Garren in connection with this Motion and Defendant's efforts to obtain Garren's compliance with the subpoenas.

Dated:  February 24, 2020                           REED SMITH LLP



/s/ *Fatemeh Mashouf*
Michele Haydel Gehrke
Fatemeh S. Mashouf
Attorneys for Defendant
UNITED AIRLINES, INC.

**MPA ISO APPLICATION FOR OSC RE CONTEMPT AND SANCTIONS AGAINST EDWARD GARREN AND MOTION TO COMPEL COMPLIANCE WITH FRCP 45(g)**