Michele Haydel Gehrke (SBN 215647)
mgehrke@reedsmith.com
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Fatemeh S. Mashouf (SBN 288667)
fmashouf@reedsmith.com
REED SMITH LLP
355 South Grand Ave
Suite 2800
Los Angeles, CA 90071
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080

*Attorneys for Defendant*
United Airlines, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLYSON CHAGAS,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED AIRLINES, INC., and DOES 1 through 10, inclusive,<br><br>Defendant. | Case. No.: 2:19-cv-03860<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER MODIFYING THE SCHEDULING ORDER**<br><br>[Filed Concurrently with Notice of and *Ex Parte* Application; Declaration of Fatemeh Mashouf; [Proposed] Order]<br><br>[ASSIGNED TO HONORABLE JOHN A. KRONSTADT]<br><br>Hearing: No hearing required<br>Complaint Filed: March 28, 2019<br>Discovery Cut Off: March 2, 2020<br>Pretrial Conference and Trial Date: TBD |

1

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER MODIFYING THE SCHEDULING ORDER**

**Table of Contents**

Page

I   SUMMARY OF ARGUMENTS ........................................................................... 4

II  PROCEDURAL AND FACTUAL BACKGROUND ................................................ 7

    A.   History of United's Efforts to Obtain Discovery, Resulting in the Pending Discovery Motion ........................................................................ 7

    B.   Plaintiff's Refusal to Allow Discovery on His Medical Records Have Become a Central Issue that Has Delayed Discovery ............................. 9

    C.   Due to Plaintiff's Misconduct, United Made Efforts to Obtain Information Through Alternate Sources with Limited Success ..................... 10

        1.   Plaintiff's Therapist Has Made Significant Claims Regarding Plaintiff's Damages But Is Refusing To Comply With Subpoenas ........................................................................................ 10

        2.   Plaintiff's Refusal to Produce His Witnesses Addresses Has Precluded United from Conducting Discovery as Necessary ............... 12

III  LEGAL ANALYSIS ........................................................................................ 13

    A.   *Ex Parte* Relief Is Appropriate And Necessary .............................................. 13

IV  CONCLUSION ................................................................................................ 15

2

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER MODIFYING THE SCHEDULING ORDER**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Garcia v. Capistrano Unified Sch. Dist.*,
   No. 8:16-02111 DOC, 2019 U.S. Dist. LEXIS 207610 (C.D. Cal. June 18, 2019) .......................... 9

*Mission Power Engineering Co. v. Continental Cas. Co.*,
   883 F. Supp. 488 (C.D. Cal. 1995) .......................... 13

*Newegg Inc. v. Ezra Sutton, P.A.*,
   CV1501395TJHJCX, 2016 WL 9108891 (C.D. Cal. Aug. 19, 2016) .......................... 14

*Shorter v. Baca*,
   2013 WL 12133826 (C.D. Cal. Nov. 1, 2013) .......................... 9

Unihan Corp. v. Max Group Corp.,
   CV 09-079212011 WL 6814044, at *1 (C.D. Cal. Dec. 28, 2011) .......................... 14

*United States v. Int'l Union of Petroleum and Indus. Workers*,
   870 F.2d 1450 (9th Cir. 1989) .......................... 9

**Federal Statutes**

FRCP 16(b)(4) .......................... 14

FRCP 45(g) .......................... 10

## I  SUMMARY OF ARGUMENTS

Defendant United Airlines, Inc. ("Defendant" or "United") has done everything in its power to avoid having to obtain Court intervention, believing that Plaintiff would eventually comply with the most basic discovery requirements after each and every meet and confer where he agreed to do so. However, at every step, he did not meet agreed upon deadlines for compliance and, when he finally provided further responses or documents, they were completely evasive, non-responsive, and inconsistent with what was agreed to. As the Local Rules require United to make every effort to obtain a resolution through the meet and confer process, United could not seek Court intervention until Plaintiff made it clear that no matter what he represented in the meet and confer process, he was simply not going to comply. United has been patient. United has been diligent. United has been professional. Plaintiff has now forced United's hand to seek Court intervention.

As detailed below, Plaintiff's false promises of compliance have created such delay that United now requires *ex parte* relief. United's request for a modified scheduling order should be granted because the pending Motion to Compel Discovery Responses, Documents, Deposition, and Request for Sanctions, filed on February 18, 2020 before the Honorable Jacqueline Chooljian ("Discovery Motion"), details extensive and crucial discovery needed to fairly litigate this matter. *See* Docket No. 27. The result of the Discovery Motion, especially as to the discoverability of Plaintiff's medical records, will have direct implications for United's designation of a medical expert. United filed the Discovery Motion as soon as possible after it became apparent that Plaintiff's promises were indeed delay tactics and after United exhausted its meet and confer requirements. United also timely filed a Motion to Compel the deposition of Plaintiff's therapist ("Therapist Motion"), who has stated unequivocally that he will not produce documents or appear for his deposition, which he has already

failed to appear for, without the Court specifically ordering him to do so. *See* Docket No. 30. Both Motions are pending before the Magistrate Judge.

What has become abundantly clear is that Plaintiff is hiding extensive and crucial information and records that the Court will have to compel him to produce. Indeed, Plaintiff is still withholding his medical records and contact information for his witnesses, forcing United to expend extraordinary resources trying to get this information from alternate sources. Due to its own diligence and despite Plaintiff's outright refusal to produce information and documents, Defendant has learned as recently as **last night** during a deposition of Plaintiff's friend (no part of which was placed under the Protective Order) that Plaintiff's claim for emotional distress, described as anxiety, depression, and Post Traumatic Stress Disorder which were allegedly caused by United and have life-long consequences, are severely undermined by (1) medications he may have been taking at the time causing "paranoia" and perhaps nightmares; (2) Plaintiff's withdrawal from alcohol and crystal meth may have been the cause of his emotional distress, including nightmares; and (3) Plaintiff's substance abuse may overlap directly with the circumstances that led to his termination. Declaration of Fatemeh Mashouf ISO *Ex Parte* Application ("Mashouf Decl."), ¶ 2. Indeed, Plaintiff redacted his **very limited** medical records (which were only produced due to United serving Plaintiff's primary care doctor) where the context implies they are referring to these issues that are highly relevant because they overlap with the time in question leading to his termination and the aftermath since his termination. Mashouf Decl., ¶ 3. Thus, counsel knew of this information and intentionally hid it up until last night's deposition after months of United trying to obtain this deponent's contact information to depose him.

For context, Plaintiff was a flight attendant for United, which has a zero-tolerance drug policy. Plaintiff was terminated for violating Company policy arising out of his falsification of a story about a break-in into his hotel room and then

5

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER MODIFYING THE SCHEDULING ORDER**

publicizing that information on social media leading to a panic by other United flight attendants. United has always taken the position that Plaintiff's medical history is highly relevant to this case, especially to the extent there is a history of drug abuse or other information which would have effected Plaintiff's ability to perceive reality when he claimed that his room was broken into, his clothes were strewn everywhere, and his lunch bag was "torn apart." The previously hidden information regarding his potential drug abuse and medications is not only relevant, but critical as it may explain how Plaintiff came to imagine this elaborate break-in that never happened.

The information gained last night is just a sliver of the discovery abuses and delay which now require United to seek Court intervention, as detailed further below and in the underlying Motions. This example is demonstrative of the incredible obstructionism and abuse of the discovery process which has highly prejudiced United over the last several months. This example also shows that Plaintiff's highly relevant and withheld medical records are almost certainly going to be ordered to be produced by the Magistrate Judge and, only upon receiving those records, will United be able to appropriately designate an expert and conduct an Independent Medical Exam.

In light of the Parties' dispute as to the discoverability of Plaintiff's medical records, the Parties have stipulated that depositions of Plaintiff's medical providers should be delayed until after the Magistrate Judge has had an opportunity to address the scope of discovery permitted on Plaintiff's medical information. This delay prejudices United and benefits Plaintiff, but United has agreed to this arrangement in an abundance of caution. The natural consequence of this delay is that it also prejudices United's ability to comply with the March 13 initial expert disclosure deadline as United will not even have the complete medical records, let alone medical provider depositions until the Magistrate Judge's order is issued.

Thus, the consequence of Plaintiff's withholding of records and information require relief from the expert discovery deadlines as well to allow United to designate

an expert after finally obtaining the information following the Magistrate Judge's order. Thus, United seeks the following relief:

| Defendant's Non-Expert Discovery Cut-Off | May 4, 2020 |
| Initial Expert Disclosures | May 25, 2020 |
| Rebuttal Expert Disclosures | June 8, 2020 |
| Expert Discovery Cut-Off | June 15, 2020 |
| Last Day to file All Motions (including discovery motions) | June 15, 2020 |

## II   PROCEDURAL AND FACTUAL BACKGROUND

### A.   History of United's Efforts to Obtain Discovery, Resulting in the Pending Discovery Motion

In anticipation of the Court ordered mediation, United attempted to conduct preliminary discovery and Plaintiff's deposition. United served Plaintiff with Requests for Production of Documents, Set One ("RFP") and Interrogatories, Set One ("Interrogatories One"), with Plaintiff's responses due on September 19, 2019. Defendant specifically selected September 25, 2019 as the date of Plaintiff's deposition in anticipation of timely receiving Plaintiff's discovery responses. Plaintiff, however, did not send any responses to Defendant's discovery until October, 17, 2019, almost a month after their due date. As a result of his untimely responses, Plaintiff's waived all objections, including on the basis of privacy and privilege. Although Plaintiff's responses to United's RFP and Interrogatories One were deficient, Defendant had no choice but to proceed with Plaintiff's already-delayed deposition in light of the Court ordered mediation on December 4, 2020. *See* Mashouf Decl. ISO Discovery Motion, Docket No. 27-2.

During Plaintiff's deposition, it became apparent that he had withheld a plethora of responsive materials responsive to United's RFP and that his responses to Interrogatories One were either false, entirely nonresponsive, or incomplete. Defense counsel was forced to spend a significant amount of time teasing out responses from Plaintiff that should have been covered by his discovery responses. In addition, even Plaintiff's counsel admitted at the deposition that some of the responses to United's written discovery were incomplete, entirely wrong, and stated that he would supplement where appropriate. *See* Mashouf Decl. ISO Discovery Motion, Docket No. 27-2.

Plaintiff's counsel's promise to supplement responses proved to be hollow. As detailed in the Discovery Motion, Plaintiff's counsel continued to delay supplemental responses despite United's continued meet and confer efforts until, on December 16, 2019, Plaintiff's counsel responded that he would supplement a handful of Interrogatories and nothing more. He did not agree to produce the documents that had plainly been withheld in light of Plaintiff's testimony at his deposition. Plaintiff's counsel further refused to continue Plaintiff's deposition. *See* Mashouf Decl. ISO Discovery Motion, Docket No. 27-2.

In anticipation of filing a Motion to Compel, United made another effort to seek resolution with a 13-page detailed letter under Local Rule 37-1 explaining the legal and factual basis requiring Plaintiff to provide responses and documents to the first set of discovery. The Parties held an in-person conference, during which Plaintiff's counsel agreed to supplement Plaintiff's responses via email on January 16, 2020, and also to consider a continued deposition depending on how much new information would be provided in the supplemental responses. Defendant finally received ***belated*** supplemental responses on January 21, 2020. As with Plaintiff's previous responses, the supplemental responses not only fell short of the Parties' agreement, but also failed to produce additional documents. United had one further in-person conference

8
**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER MODIFYING THE SCHEDULING ORDER**

with Plaintiff to obtain the outstanding discovery and, not having received anything thereafter, United filed the Discovery Motion on February 18, 2020 to compel Plaintiff to meet his discovery obligations. *See* Mashouf Decl. ISO Discovery Motion, Docket No. 27-2.

### B. Plaintiff's Refusal to Allow Discovery on His Medical Records Have Become a Central Issue that Has Delayed Discovery

Of great import in the Discovery Motion is Plaintiff's medical records, for which all objections and privileges have been waived because (1) Plaintiff waived objections to the RFPs by not providing timely responses, (2) Plaintiff has placed his medical and mental health at issue, (3) Plaintiff disclosed this same information to individuals who eliminate any possible privilege, and (4) Plaintiff did not object or file a Motion to Quash in connection with the various subpoenas on his medical providers. As detailed in the Discovery Motion, Plaintiff has the duty to obtain responsive records from his medical providers and such records are discoverable. *Garcia v. Capistrano Unified Sch. Dist.,* No. 8:16-02111 DOC (ADSx), 2019 U.S. Dist. LEXIS 207610, at *9 (C.D. Cal. June 18, 2019) (defendants' need to access plaintiff's medical information to defend against allegations that they cause her emotional distress is high and a stipulated protective order would adequately protect against unauthorized disclosure); *see also United States v. Int'l Union of Petroleum and Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("Control is defined as the legal right to obtain documents upon demand."); *Shorter v. Baca*, 2013 WL 12133826, at *3 (C.D. Cal. Nov. 1, 2013) (requiring Plaintiff to obtain medical records from health providers or provide counsel with consent to disclosure of her medical records).

However, to date, Defendant has only received highly redacted records and extremely limited information. Mashouf Decl., ¶ 4. Defendant is entitled to all medical records, but Plaintiff's obstructionism and has forced United to delay further

9

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER MODIFYING THE SCHEDULING ORDER**

discovery on Plaintiff's medical history pending a resolution from the Magistrate Judge on the Discovery Motion. Indeed, Plaintiff's providers have provided unredacted medical records which Defense counsel has not downloaded or reviewed in an abundance of caution due to Plaintiff's frivolous Motion to Disqualify and allegations that the records were somehow improperly obtained. To be clear, ***United has every right to review these medical records*** and if Plaintiff disagreed with their production, it was up to Plaintiff to take affirmative steps in advance of their production rather than wait afterwards. However, given the dispute over these records, United has not accessed these records to which it is entirely entitled to.

As a result, the Parties have agreed that Plaintiff's medical provider depositions should be delayed pending resolution of the Discovery Motion as United can hardly conduct depositions without the unredacted medical records and, in the case of his therapist, without any records. The natural consequence of United's good faith efforts to accommodate Plaintiff's objections is that United has not been able to begin its expert discovery, including conducting an Independent Medical Examination.

### C. Due to Plaintiff's Misconduct, United Made Efforts to Obtain Information Through Alternate Sources with Limited Success

#### 1. Plaintiff's Therapist Has Made Significant Claims Regarding Plaintiff's Damages But Is Refusing To Comply With Subpoenas

After Plaintiff repeatedly failed to produce his medical records despite already waiving all objections and privileges, on November 8, 2019, Defendant began attempting to serve his therapist, Mr. Garren, with a subpoena for Plaintiff's medical records. As outlined in further detail in Defendant's Application for Order to Show Cause re Contempt and Sanctions Against Edward Garren and Motion to Compel Compliance with FRCP 45(g), several issues arose during the process of trying to serve Mr. Garren. First, Plaintiff provided a false address for Mr. Garren, requiring

Defendant to expend additional time, money, and effort to locate the correct address for service. Second, when Defendant, through its process server, First Legal, attempted to serve Mr. Garren at the correct address, Mr. Garren actively avoided service. First Legal finally successfully hand served Mr. Garren with his subpoena after a two-day stake out at his residence. Even after Defendant successfully served Mr. Garren with the subpoena, Mr. Garren repeated refused to comply with the requirements under the subpoena, despite having a signed authorization from Plaintiff to release the records and despite First Legal's diligent efforts to obtain status updates on the records request and ensure compliance. *See* Therapist Motion, Docket Nos. 30, 30-1, and 30-2.

Confusingly, while Mr. Garren refused to produce any records in response to United's subpoena, he sent Plaintiff's counsel a litigation-specific letter at the same time he was supposed to be complying with the subpoenas and appearing for his deposition. Therein, he provided information never previously before disclosed regarding Plaintiff's claims of emotional distress. Over the next several weeks, the process server made several more attempts to obtain the records and a response from Mr. Garren. On January 27, 2020, neither Mr. Garren nor Plaintiff's counsel appeared for Mr. Garren's deposition, without explanation. Defendant took a non-appearance and then contacted Mr. Garren to obtain his voluntary compliance with the subpoenas. Mr. Garren stated, in no uncertain terms, he would not provide records or testimony without a Court order. Thus, United filed the Therapist Motion to obtain those records and his testimony. *See* Therapist Motion, Docket Nos. 30, 30-1, and 30-2.

Significantly, Plaintiff did not submit timely objections to the subpoenas and did not file a Motion to Quash or other motion in connection with the subpoenas. To date, Defense counsel has not received any documents in response to Defendant's subpoena for records served on Mr. Garren. *See* Therapist Motion, Docket Nos. 30, 30-1, and 30-2; Mashouf Decl., ¶ 5.

11

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER MODIFYING THE SCHEDULING ORDER**

### 2. Plaintiff's Refusal to Produce His Witnesses Addresses Has Precluded United from Conducting Discovery as Necessary

As discovery proceeded, Plaintiff sprinkled in more and more witness names, claiming that all these individuals have knowledge of his claims without actually stating what specific knowledge they have. Further, Plaintiff is refusing to appear for a second day of his deposition with adequate time to answer questions about these individuals, precluding United from knowing the extent of their knowledge. Instead, Plaintiff has taken the position that United must go through Plaintiff's counsel to coordinate those depositions and should not have their addresses to enable United to serve the subpoenas directly. Using witness phone numbers, United has tried to track down these individuals just to learn that many of the names provided were intentionally misspelled or misstated, including Plaintiff's sister. Thereafter, United attempted to serve these individuals but, with the exception of one individual, has been unable to track them down.

The one witness United was successful in tracking down (a friend of Plaintiff's) was deposed just hours before filing this motion. The deponent testified about significant factual information regarding Plaintiff's claims and produced text messages with Plaintiff that were responsive to the RFPs which Plaintiff has not produced. Of greatest import is that the deponent possessed significant information regarding Plaintiff that Plaintiff had been withholding to date, claiming they are privileged and private – despite having already waived such objections. The deponent explained that Plaintiff has been suffered from alcohol and drug abuse, potentially at the time of the incident leading to his termination, and has been sober for only nine months. He also provided text messages regarding Plaintiff's "paranoia" and prescription medications. He testified that Plaintiff's nightmares may have been due to drug withdrawals, not necessarily the emotional distress Plaintiff has historically attributed to his termination. He further testified that Plaintiff has discussed treatment

by his therapist and psychiatrist with the deponent – despite now claiming that such information is private and privileged. The very fact that the deponent had such information proves that the information is not privileged or private. Further, it cannot be understated that United only obtained this information due to its own extraordinary efforts to track down the witness after Plaintiff's refusal to provide his address.

Defendant must be able to conduct the depositions of all of Plaintiff's witnesses and conduct follow-up discovery as appropriate after the Magistrate Judge has had an opportunity to hear the Discovery Motion. In that vein, United must be able to designate an expert and conduct an Independent Medical Examination after having a full opportunity to review Plaintiff's medical records and depose his providers. ***Plaintiff has agreed to postpone the depositions of Plaintiff's medical providers to allow the Magistrate Judge to rule on the scope of discovery permitted on Plaintiff's medical history***. With this arrangement, the natural consequence is that United will need further time to conduct expert discovery.

## III  LEGAL ANALYSIS

### A. *Ex Parte* Relief Is Appropriate And Necessary

*Ex parte* relief is warranted where the movant will be prejudiced if the underlying request is heard according to regular notice procedures and the moving party is without fault in creating the situation that requires relief on an expedited basis. *See, Mission Power Engineering Co. v. Continental Cas. Co*., 883 F. Supp. 488, 492 (C.D. Cal. 1995). *Ex parte* relief is appropriate where "the evidence . . . show[s] that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures . . . [and] the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Id.* This application presents one of those instances.

As discussed in detail above and below, Defendant currently has two discovery

motions pending before the Magistrate Judge. In both instances, Defendant made timely, repeated, diligent, and good faith attempts to meet and confer with Plaintiff to informally resolve the discovery issues, but had to resort to motion practice given the impending cutoff dates.

Despite Defendant's continued diligence in seeking all available discovery, Plaintiff's counsel and Mr. Garren's pattern of avoidance and refusal to comply with their discovery requests have created circumstances under which *ex parte* relief must be granted because absent such relief, even if Judge Chooljian were to grant Defendant's motions, her hands could be tied by the March 2, 2020 discovery cut off deadline as she feels she does not have the authority to make modifications to the scheduling order.

### A. Modification Of the Scheduling Order Is Appropriate and Necessary

A scheduling order "may be modified only for good cause and with the judge's consent." FRCP 16(b)(4). This Court should consider: (i) the degree of prejudice to any party; (ii) the ability of that party to cure the prejudice; (iii) any impact which the amendment would have on the orderly and efficient conduct of the trial; and (iv) any willfulness or bad faith by the party seeking the amendment. *Newegg Inc. v. Ezra Sutton, P.A.*, CV1501395TJHJCX, 2016 WL 9108891, at *1 (C.D. Cal. Aug. 19, 2016) (citing *Galdamez v. Potter*, 415 F.3d 1015, 1020 (9th Cir. 2005)); *Unihan Corp. v. Max Group Corp.*, CV 09-07921 MMMPLAX, 2011 WL 6814044, at *1 (C.D. Cal. Dec. 28, 2011) (same). Each of these factors weigh in favor of a modification here.

First, as discussed above, United has been diligent in pursuing discovery, but has been stymied by Plaintiff, his counsel, and Mr. Garren. United could not have predicted the level of obstruction and delay it would face each time it sought and reached agreements with Plaintiff in hopes of avoiding motion practice. Because it is Plaintiff's obstructionist stance that has led to the present motion, he cannot claim prejudice and, unlike United, has not been precluded from obtaining discovery to

adequately prosecute the case. The discovery improperly withheld by Plaintiff includes, for example, medical records necessary to evaluate Plaintiff's emotional distress and conduct an Independent Medical Examination; Plaintiff's testimony regarding the video footage taken from the hallway during the alleged break-in at his hotel room; and testimony from witnesses identified by Plaintiff as individuals with information pertaining to his claims.

Second, such prejudice to United would be incurable because, absent an order from this Court, non-expert discovery would close. United does not ask this Court to rule on the underlying discovery motions themselves, but rather to extend the fact discovery cut off to allow adequate time to conclude fact discovery if the Magistrate Judge grants United's pending motions.

Third, amending the scheduling order would have no impact on the orderly and efficient conduct at trial because no trial date has been set yet in this case.

Finally, there is no bad faith in United's efforts to seek a modification of the scheduling order. Indeed, United has been accommodating throughout litigation to Plaintiff and his counsel's often unreasonable demands and moved for Court intervention only when it became clear that no amount of negotiations would motivate Plaintiff and his counsel to comply with their discovery obligations. United's lack of bad faith is further shown by Plaintiff's counsel acknowledgment that he would not oppose this *ex parte* application.

## IV    CONCLUSION

For the foregoing reasons, United respectfully requests the Court issue an Order granting it's *Ex Parte* Application to modify the current cut-offs as follows:

| | |
|---|---|
| Defendant's Non-Expert Discovery Cut-Off | May 4, 2020 |
| Initial Expert Disclosures | May 25, 2020 |
| Rebuttal Expert Disclosures | June 8, 2020 |
| Expert Discovery Cut-Off | June 15, 2020 |

15

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER MODIFYING THE SCHEDULING ORDER**

| Last Day to file All Motions (including discovery motions) | June 15, 2020 |
|---|---|

Dated:  February 28, 2020                           REED SMITH LLP


                                                    /s/ *Fatemeh Mashouf*
                                                    Michele Haydel Gehrke
                                                    Fatemeh S. Mashouf
                                                    Attorneys for Defendant
                                                    UNITED AIRLINES, INC.

16

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER MODIFYING THE SCHEDULING ORDER**

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is REED SMITH LLP, 355 South Grand Avenue, Suite 2900, Los Angeles, CA 90071.

On February 28, 2020, I served the following document(s) by the method indicated below:

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER MODIFYING THE SCHEDULING ORDER**

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. (See attached Service List) I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this Declaration.

☑ by transmitting via facsimile on this date from fax number +1 213 457 8080 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 PM and was reported complete and without error. The transmission report, which is attached to this proof of service, was properly issued by the transmitting fax machine. Service by fax was made by agreement of the parties, confirmed in writing.

Martin Isaac Aarons
Shannon Helene-Pagel Ward
AARONS LAW FIRM APC
16000 Ventura Blvd., Suite 850
Encino, CA 91436
Telephone: 818.794.9250
Facsimile: 818.302.2072
maarons@aaronslawfirm.com
shannon@aaronslawfirm.com

*Attorneys for Plaintiff*
*Allyson Chagas*

I declare under penalty of perjury under the laws of the United States that the above is true and correct. Executed on February 28, 2020, at Los Angeles, California.

_____
Charlyn Jones

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

17

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER MODIFYING THE SCHEDULING ORDER